The next case this morning is 523-0500, People v. Jenkins. Arguing for the appellant is James Waller. Arguing for the athlete is Justin Nicolosi. Each side will have 10 minutes for their argument. The appellant will also have 5 minutes for rebuttal. Please note, only the clerk of the court is permitted to record these proceedings today. Good morning, gentlemen. Good morning. Happy Halloween to you all. I'm sorry you had to wait. We had a case where we had some questions, so hopefully yours won't go as long. Okay, Mr. Waller, be careful what you ask for. Are you ready to proceed? I am, thank you. All right, go ahead. My name is James Waller. I work for the Appellate Defender's Office. It is my pleasure to represent Tyree Jenkins before you today. We're asking this court for a new trial based on the improper admission of propensity evidence, or in the alternative, did the case be remanded back again for proper crankle procedures? Finally, we're asking that this court vacate the conviction and sentence for count three under the one act, one crime rule. I'm going to intend to stand on the arguments and concessions in the briefs on that issue, unless you have questions, of course. Tyree should receive a new trial because the prosecution was allowed to introduce non-evidentiary documents from prior cases to prove propensity. Under section 115.7.4, it's okay to introduce evidence of prior domestic violence convictions to show propensity to commit domestic violence, but you still have to use evidence following the rules of admissibility. The Illinois Supreme Court has held that 7.4 must be construed narrowly in the defendant's favor as much as possible. Charging documents simply don't meet that standard of admissibility. They're nothing more than unproven hearsay assertions. In People v. Curie, the fourth district held that this is simply the defendant's status of somebody who's been convicted of those crimes that the jury needs to hear, not the context surrounding that status. And in People v. Bennett, this court has recognized that you can show that status in other ways, but you still have to use evidence, admissible evidence, subject to balancing of probity and prejudice of that evidence. In this case, excuse me, in that case, this court explicitly found that sentencing documents and minimuses were overly prejudicial and therefore should never have been admitted. Now, the state in this case wanted to show prior convictions in two cases, 15 CF 577 and 12 CF 219. The 2015 case was a conviction for unlawful restraint, not domestic battery. He was charged with domestic battery in that case, but the charge was dismissed. So there was never any finding of a domestic relationship, which is just as key to the definition of a crime of domestic violence as a violence element is. This is especially true when we remember we have to construe 7.4 narrowly in Tyree's favor. So the conviction should never have been admitted as well. I believe that that should be the standard under the definitions of the statute. But if they did want to try to admit it or to somehow show that it was a crime of domestic violence, they needed to do it through admissible evidence. Which would have been what? Which would have been, well, we saw, I think in some of the cases there have been live testimony, I think in dabs had live testimony and that can be done, constrained within the proper limits. But it's the state's burden to come up with admissible ways to do this. I personally don't believe that unlawful restraint without some finding that there was a domestic violence element is a crime of domestic violence under 7.4. But if it wasn't the same victim involved. It was, but we don't know if there was a domestic relationship at that time. That's why we don't know if it was a crime of domestic violence. And you can't prove that up with hearsay documents. You can't prove that up with sentencing documents that this court found are unduly prejudicial in Bennett. The 2012 case was domestic battery, but that was proven again by the same combination of hearsay charging documents and overly prejudicial sentencing documents. And to add insult to injury, those documents weren't what the state said they were going to be. The state said that admitting certified copies of convictions, not charging documents for the wrong charges that were dismissed and trial counsel, Mr. Wheeler's asleep during all this doesn't say boo. Is there any evidence that the jury actually got these documents? It's unclear your honor. Both the state and I laid this out in our briefs a bit. There is some discussion about not sending these back, but then there's a vague statement, I think from defense counsel that says we can send all of them back. We don't know if he's talking about exhibits one and two, one, two, three, and four or what. So the record is unclear, but more of the point, I believe that the, I think the law suggests that the measure has to be what's admitted into evidence. If we start splitting hairs on what the, what the jury saw, whether something was published, whether they paid attention because the evidence was given at 1 PM on the fourth day of the 90 degree trial. That's that we can't do that. Also we give limiting evidence. These documents that I, the exhibits were admitted into evidence. Is that correct? That's correct. And, and the jury, did they ask for those documents at any time? Do we know if these exhibits were sent back to the jury? We don't, I believe the record is unclear on that point. There was, there's, there's discussion about intent to not send them back. And then somebody says we can send them back, but we don't know what them is referring to in there. The record just wasn't, wasn't well done. And so we have to rely on what's admitted into evidence. If we give a limiting instruction to a jury saying, pay attention to this, don't pay attention to that. We assume that they paid attention to it. The converse of that is we have to assume that what's in the evidence factored into their decisions. And the prejudicial impact is, is immeasurable in this case. This was close case for credibility about how BP got her injuries. Even without the exculpatory video, the defense council never bothered to track down. BP gave conflicting stories that put her own credibility into question. The jury went into a second day of deliberations telling the court they were deadlocked at one point. So it's impossible to call this large of an abuse of discretion harmless. On this issue alone, a new trial should be ordered. But let's also talk about the second issue. Please do. I'd like to you to specifically, I would like for you to discuss the actual crankle hearing that occurred. Sure. Um, your honor, the, uh, what, what, what occurred was after three years of, of no action on this case and many, many attorneys Mr. Romero files, no written motion for a new trial does not lay out the claims in writing anywhere, which I think is required for any motion for a new trial has to be in writing, but he never files any motion. What he does is he calls trial counsel. He doesn't call Tyree to lay out the claims that he presented in the, in the original pre-crankle hearing, or to, to explain all of the things that the fourth district went way out of their way to highlight need to be investigated. Doesn't call Tyree at all. Only calls trial counsel and then doesn't know how to treat him as an adverse witness. He has to be told that he's allowed to lead this witness. And then he still doesn't do it. He doesn't cross examine him. He doesn't confront him with the record when the record contradicts Mr. Wheeler's own recollections, bare recollections. Mr. Wheeler doesn't recognize anything. Doesn't remember anything until the state. I believe that the transcripts from that hearing, um, the, the portion with, uh, the crankle counsel was about seven pages long. Does that sound about right? That does sound about right. Your honor. All right. So it's my understanding that the fourth sent this back, even though there was a preliminary crankle hearing, correct? That's correct. And in that preliminary crankle hearing, I believe the fourth stated that the trial court did an exhaustive questioning. Is that correct? I, I don't remember if they use the word exhaustive, but I defer to your memory on that. They may not have used the word exhaustive, but I think that they intimated that it was an in-depth preliminary inquiry. Would you agree with that statement? Yes. It was certainly enough to discern that their, their factual representations were in conflict with each other. And Mr. Wheeler's was in conflict with the record. There was enough of an inquiry to determine that. And because of that, they sent it back for the appointment of counsel. That's right. To present these issues. Yes, your honor. And we have six or seven pages, correct? That's right. And only one about one page of that is, is on point. Uh, it has anything to do. First of all, counsel never gets into the exculpatory video issue at all. Um, he never presents it. It just doesn't exist. He never even bothered apparently to read the decision. The only thing he addresses the conflict issue that was highlighted by the fourth district. But again, he only asks Mr. Romero, if he remembers that there was a conflict, if he remembers, I talked about it. Mr. Merritt doesn't remember, excuse me, Mr. Wheeler doesn't remember anything until state asked him some questions. Then we get some vague recollections, but he's not confronted with the statements by Tyree. He's not confronted with the record or anything. It, this is why it's, I don't lightly or are often make an argument that chronic should apply. Um, but here there was no representation on many of these issues. And so I think it should be analyzed under chronic. It certainly was there's precedent for that in, in, uh, downs, but even under Strickland analysis, there's, there's no, there's been no effective assistance of counsel here. Um, well, uh, counsel could have made the decision that there was no conflict of interest under the case law. There was no per se conflict of interest. So why raise it? Well, your honor, he did raise that one though. So we can't even assume that that's what happened. That's the one issue he did raise. He gets into it. He asked him about it and then gives up. He doesn't, he doesn't present the issue. He asks Mr. Wheeler to explain why it's not an issue and, and then doesn't, and then doesn't do anything to challenge it. Even after being you can cross examine this guy. You can lead him. He doesn't do it. So if we adopt your position, what is the remedy? Do what is your request for remedy then? Well, I'm going to, I'm going to ask big, like, like you do in court here. I think that needs to go back for a new trial period on the first issue. And we have enough smoke of possible IAC. Certainly we have IAC in, in Mr. Wheeler, not checking at those documents, even reflect the But short of that, the remedy is to send it back for more crinkle. Unfortunately, here we are seven years after he first raised these issues and he has not been heard. So at this point, law and equity suggests there's a new trial. There's enough here for a new trial, but even short of that, it needs to be sent back again for more crinkle hearing from an attorney who's going to present these issues and present them vigorously. So with that in mind, that's what we're asking for. In addition, of course, to the vacation of count three, I see my time's expired. So if there's no other questions, I'll see you again on rebuttal. Okay. Uh, justice Shuler. Not at this time. Justice Moore. No questions. All right. Thank you, Mr. Waller. Uh, let's hear from Mr. Nicolosi. Good morning, your honors. Uh, my, my name is Justin Nicolosi. I represent the state of Illinois in this matter. May I please the court, Mr. Waller, the state submits this court should affirm, um, the readings below, um, regarding the issue of the prior convictions. Um, the state submits that the record is clear, uh, that the prosecutor, uh, first off the, off the start, the state acknowledges that the prosecution, uh, submitted some documents that weren't, um, relevant and probative to prove the prior conviction, but the record does show that the state explained why it provided extra documents. It wanted to prove to the court that these prior convictions that were, um, admissible under one 15 dash 7.4, um, did qualify under that statute. And that the one conviction that was unlawful or strained because the title wasn't, um, expressly domestic violence issue. That's why the state wanted to, um, provide the arching instruments and other documentation to prove that these were, um, viable convictions for the purpose. What about that? This notion that council, uh, proposed that because it's admitted, we have to assume then that it has reached the jury and that it influenced them. Uh, your honor, as I wrote in my brief, I think the record strongly refutes that suggestion. The prosecutor expressly told the court not to send these documents back. The court agreed with the state that these weren't going to be sent back. I, based on that conversation, I don't know how we can possibly make the leap that these documents actually made it to the jury. The court didn't read into the record for the jury, this information that was improper. It only, um, provided the charging, uh, instrument, uh, language. Except they made it into the record though. Correct? Yes. Yes. Great. We don't know how that happened either. Right? Well, I think the prosecutor blame on the record by those made it into the record, the record, because the prosecutor provided all of those documents. Again, as I, as I stated in order to prove that these convictions actually happen and that they are, that they fall under one 15 for, but as I argue, I think pretty extensively in my brief there, there's absolutely no evidence that these documents made it to the jury. It didn't, um, prejudice the jury like stuff, like the information and edit that was improper. Um, other than the state simply submits, there's just nothing in this record that you can connect the dots that the jury, um, was privy to any of this. The judge read the information to the, uh, jury, correct? Correct. And, um, is it just the reading of the information that you say is proper? And, and the fact that the defendant was actually convicted of those and the convictions, right? The convictions. Yes. Yeah. The, the, the information about sentences and stuff that was in the documents that the prosecution presented to the court, that was the improper stuff. That was what was improper, uh, that the court found. And, and it, wasn't given to the, um, to the jury and the jury also wasn't given to the jury, but it was admitted into the record because it was in evidence. Correct. Your honor. Correct. But, but again, we can't point to any prejudice here because the jury who, you know, was, was hiding defendant's fate. Didn't, didn't, wasn't privy to that. There is some ambiguity, at least, uh, alleged by the defendant in the record when they're discussing what exhibits go back to the jury and the defense lawyer kind of throws up his hands and says, let it go back. But we don't know what, what it is that's going back. So what kind of, I mean, what kind of presumption can we make from that? Uh, your honor, I understand this being up in the air on that point alone, but I think the fact that the prosecutor and the court discussed amongst themselves, not sending it back, I don't see why that wouldn't be definitive. Okay. Moving on to the second issue regarding, um, the, the crankle issue. As I kind of tether my whole argument in my brief to, um, the fact that the record here is, is completely inadequate to discuss, uh, whether counsel Amaro, uh, was effective or not. Um, I have nothing. If the record's not adequate, how do we assume that he was effective? We, we can't assume, we can't assume either way, your honor. This is, uh, as the Supreme court held in beach, um, I believe that was 2017 that, that when the record is inadequate, um, this, uh, lateral proceedings are a much better forum for discussions such as this. We have no idea what counsel Amaro did. Did he look at the video? Did he talk to the investigator? Did he talk to Wheeler about the video? We have no idea. As counsel Waller stated, there was no mention whatsoever from Amaro on the record about this issue. We can't. And given the fact, what would the state have the defendant do? You would have this court affirm everything and then tell the defendant, go file a post conviction petition. Absolutely. Your honor. That's kind of what V says when the record's inadequate and we can't make a decision on appeal, then we need, we need more information. And I can't think of a record that requires more information than this one. And we have nothing from Amaro about what he did, who he talked to, how he investigated the video issue. We get, we have to assume again, we're assuming again, that he saw the, the appellate court's decision, sending it back for more frank proceedings, typically said what two issues it wanted appointed counsel to consider the video issue was one of those that was considered that was listed in that decision. And we have absolutely nothing from Amaro about the video issue. So how can we make a decision that he was ineffective regarding that issue when it's certainly possible that he knew that issue was to be investigated and he actually investigated the issue. We talked to the investigator Wheeler. We have no idea. We can't he didn't do it based on the fact that he didn't present the issue below because we also, this record isn't silent about this video either. Wheeler testified or stated that he viewed the video with his investigator. They couldn't figure out who was talking. They couldn't hear what was talking. And because they, they, there's nothing probative in that video. They decided not to present it. So we already have that on the record. It's not, it's not as if the record is completely silent regarding its video. So I think, I don't know how we can possibly rule that Amaro was ineffective failing to do anything with the video when we don't know what Amaro did. In a post conviction position where we get an affidavit from Amaro, possibly some testimony from Amaro, that's what we need to decide. And each specifically refers to situations such as this. Regarding the conflict issue, the state would would kind of submit the same thing on this where, you know, counsel Waller claims that that Amaro didn't call the defendant or FIPS or anything to talk about the conflict. Again, we don't know. Amaro just called Wheeler to testify about it. We don't know what other investigatory measures Amaro took regarding the conflict. They would also argue that the record kind of shows there really wasn't a conflict. If there's no conflict at all, then this issue kind of goes away. It's really not here. As I argued in my brief, this is not a per se conflict or it's not a contemporaneous relationship between Wheeler and FIPS and the defendant. And the state would argue there's no real actual, as I argued in my brief, there's no evidence of any conflict whatsoever. There's even less information in the record about what Amaro did regarding this issue. But we just need more information. We need to hear from Amaro. He's silent. But in order to, if you consider what you're saying, you're asking this court to affirm the lower court. And so we would have to reach the issue of effective assistance of counsel as to whether or not to send it back for a crankle hearing. We have to reach that issue. We can't not decide it based on what you're suggesting. Your Honor, I guess I may be confused here. I don't know why this court, as Veach instructs, why can't this court point out that there is no basis in the record for calling Amaro ineffective? I don't understand where, I don't understand where it is. Then we would send it back for a crankle hearing. Well, yeah. Based on what? We don't know if there's any merit to anything, any of these we don't know what counsel, it's already happened. And Amaro did something. We don't know what he did. And I don't know why we can send it back just because we don't know. I don't quite understand. But then we can't affirm it either. Well, Your Honor, I mean, again, I don't know. You're obligated to do one or the other. I understand. But if we send it back, I guess I don't understand what the point of Veach is. I guess there's really no point to it. If this record being completely inadequate, we could still send it back. And I guess I don't understand why Veach explains that collateral proceedings are more. So if we send it back and then counsel does the same type of investigation regarding the video and the conflict issue, but presents nothing regarding the video, because let's say counsel does the same as Amaro did, found out, or presumably the same Amaro did, that the video was not even probative evidence whatsoever. And then we're going to be back in the same spot. Or perhaps counsel could do as much as the trial court did in the preliminary inquiry. Presumably. Presumably. This court can send it back with instructions. I understand. I understand, Your Honor. I'm just making the argument that the best that I can, based on an inadequate record. Yes, I understand that the court is going to do it. And I'm just going to advocate as best I can for the state. I see my time is up. I apologize for going over. I understand there were some questions. I'm sure you're relieved. I'd be happy to answer any other questions if you have them. Okay, Justice Scholar. No questions. All right, Justice Moore. No questions. All right. Thank you, Mr. Nicolosi. Mr. Waller for the defendant. Thank you, Your Honor. First, I'd like to point out that Veatch actually reached the issue. Veatch found its own record to be sufficient to move forward on this. Did not kick things back for post-conviction. But more importantly, Veatch is not the only case ever decided by Illinois courts. We have People v. Kiles, which says if we send it back for a crankle hearing, and we point out issues for you, and this is in my briefs, People v. Kiles, and you don't, there's no indication that you investigated or presented these issues, then now it's not an effective assistance to counsel. It has to be remanded back again. We don't have to reinvent the wheel here or come up with some third solution. Downs says, hey, we sent this back with specific issues we want you to raise. You didn't do them. Now we want you to put on the record whether you did it or not. We could do the same thing here. Kiles did the same thing. They sent it back for a more crankle, I believe, after there's no indication that crankle counsel did what they were supposed to do. So Veatch is not the end of the inquiry here. And if this was a post-conviction, we'd have rule 651C. We'd have a presumption. Counsel would have had to certify that they did everything. And then they would have a presumption. Post-conviction counsel doesn't even have to give effective assistance to counsel, only has to give reasonable assistance. And we still require them to certify that they looked into everything. The bar is higher here. We expect a higher level of performance and crankle than we do on post-conviction. And so there needs to be, when the appellate court tells you to do something, you need to come back and you can say, I did it. And we see this all the time. We see, I mean, I've been doing this long enough to see crankle counsel say, he raised seven issues, Your Honor. After investigation, I'm going to proceed on four of them without comment on the other three. Hey, I would have a much harder argument if counsel had done that. He didn't do it in this case. I would, again, the state talks about how, to go back to the first issue for a moment, the state, Mr. Nicolosi mentioned that the state wanted to prove that this was a domestic. So that's why he put these other things in. You can't prove things without evidence. And what the state submitted was not evidence. Charging documents are not evidence. So I don't care what the state wanted to prove. What they tried to prove was with incompetent evidence, hearsay, self-serving hearsay provided by the state. And charging documents that we already know, black letter law, unduly prejudicial. Jury doesn't get to see those. So I don't care what their intent was, the way their actions spoke louder than their words here. And because there was not sufficient evidence to bring in this propensity evidence, which is a real, real exception to our jurisprudence, because they didn't fit that peg in that hole correctly, then the propensity evidence needs to come out. And it was extremely, I mean, prejudicial evidence, propensity evidence, we know how strictly controlled. So if you don't get it right, it needs to come out of the case. So regardless of whether the jury was exposed to it, and again, I have never seen a case, I've never seen an abuse of discretion be ignored because the evidence wasn't published to the jury. The cases always go based on whether or not it was admitted into evidence. But even setting that aside, the prior convictions of domestic violence were not proven up by appropriate evidence. And so the entire block, just even the bare bones recital that the court gave should not have come in. It was an abuse of discretion to do that because there was no evidentiary basis to admit those documents. Again, counsel and I can go back and forth about how strongly the record refutes whether or not the evidence went back. I can tell you R-476 is where defense counsel says, you can send them all back. And again, it's hard to tell which way that's going. I'm going to we can say it clearly refutes it, but we have the prosecutor saying we don't need to send it back and the defense attorney saying you can send them all back. And we're talking about four exhibits. So all I think should be read expansively when we're talking about that few things. I believe that's all the points I wanted to raise on rebuttal. The court have any other questions for me? Mr. Chauvin, no questions. Justice Moore? No questions. I guess not, Mr. Waller. Gentlemen, that concludes the arguments in your case today. And it also concludes the court's docket for today. So we will be in recess. This case will be taken under advisement.